IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DENNY ROBERTSON § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| VS. § | NO. 3-10-CV-1669-BD | |
| § | | |
| MICHAEL J. ASTRUE, § | | |
| Commissioner of Social Security § | | |
| § | | |
| Defendant. § | | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Denny Robertson seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons stated herein, the hearing decision is reversed.

I.

Plaintiff alleges that he is disabled due to a variety of ailments, including brachial nerve palsy, seizure disorder, anxiety disorder, and a history of testicular cancer. After his applications for disability and supplemental security income ("SSI") benefits were denied initially and on reconsideration, plaintiff requested a hearing before an administrative law judge. That hearing was held on February 10, 2009. At the time of the hearing, plaintiff was 30 years old. He is a high school graduate with past work experience as a fast food worker, a customer service representative, and an animal kennel attendant. Plaintiff has not engaged in substantial gainful activity since November 14, 2006.

The ALJ found that plaintiff was not disabled and therefore not entitled to disability or SSI benefits. Although the medical evidence established that plaintiff suffered from a seizure disorder, obesity, depression, and anxiety, the judge concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. The ALJ further determined that plaintiff had the residual functional capacity to perform his past relevant work as a fast food worker. Plaintiff appealed that decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal district court.

II.

In four grounds for relief, plaintiff contends that: (1) the ALJ used the wrong legal standard in evaluating the severity of his impairments; (2) the judge failed to consider whether his seizure disorder met the requirements of Listing 11.02 or 11.03; (3) the ALJ improperly evaluated his credibility; and (4) the assessment of his residual functional capacity is not supported by substantial evidence.

A.

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether the proper legal standards were used to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *see also Austin v. Shalala*, 994 F.2d 1170, 1174 (5th Cir. 1993). It is more than a scintilla but less than a preponderance. *See Richardson*, 91 S.Ct. at 1427. The district court may not reweigh the evidence or substitute its judgment for that of the Commissioner, but must

scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

A disabled worker is entitled to monthly social security benefits if certain conditions are met. 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *Id.* § 423(d)(1)(A); *see also Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1. The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3. The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. This determination is made using only medical evidence.

4. If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See generally*, 20 C.F.R. § 404.1520(b)-(f). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing other work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995), *citing Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *Id.* However, procedural perfection is not required. The court will reverse an administrative ruling only if the claimant establishes prejudice. *See Smith v. Chater*, 962 F.Supp. 980, 984 (N.D. Tex. 1997).

B.

Among the arguments made by plaintiff is a single ground that compels remand -- the ALJ failed to consider whether he is disabled under Listing 11.02 or 11.03. Listing 11.02 provides that an individual is presumptively disabled if he suffers from:

> [C]onvulsive epilepsy, (*grand mal* or psychomotor), documented by detailed description of a typical seizure pattern, including all

> associated phenomena; occurring more frequently than once a month, in spite of at least 3 months of prescribed treatment. With:
>
> A. Daytime episodes (loss of consciousness and convulsive seizures) or
>
> B. Nocturnal episodes manifesting residuals which interfere significantly with activity during the day.

20 C.F.R. Pt. 404, Subpt. P., App. 1, § 11.02. A person is presumptively disabled under Listing 11.03 if he has:

> [N]onconvulsive epilepsy (*petit mal*, psychomotor, or focal), documented by detailed description of a typical seizure pattern including all associated phenomena, occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

*Id.*, § 11.03. Under both Listings, "the criteria can be applied only if the impairment persists despite the fact that the individual is following prescribed antiepileptic treatment." *Id.*, § 11.00(A). Where such treatment appears to be therapeutically inadequate, "consideration should be given as to whether this is caused by individual idiosyncrasy in absorption or metabolism of the drug." *Id.*

Here, the ALJ determined at Step 2 of the sequential evaluation process that plaintiff suffers from a "seizure disorder" that constitutes a severe impairment under the social security regulations. (*See* Tr. at 12). In making that determination, the judge considered plaintiff's testimony at the administrative hearing and objective medical evidence documenting his extensive history of seizures. (*See id.* at 12-14). At the hearing, plaintiff testified that he has "little" seizures every day and *grand mal* seizures at least two to three times a month even though he regularly takes Dilantin. (*Id.* at 25). Plaintiff stated that it takes anywhere from 30 minutes to an hour before he is functioning normally after a little seizure, and up to a full day for him to recover from a *grand mal* seizure. (*Id.* at 31).

Although plaintiff does not seek medical attention after every seizure event, (*see id.* at 28), he has gone to the hospital several times because of seizures. (*Id.* at 317, 502, 512, 516). For example, on March 22, 2005, plaintiff was admitted to the emergency room following a seizure that caused him to bite his tongue. (*Id.* at 317). On February 11, 2006, plaintiff was brought to the emergency room during a seizure that caused him to lose consciousness and left him mildly confused afterwards. (*Id.* at 516). Two weeks later, on February 28, 2006, plaintiff was taken to the emergency room after suffering a seizure that caused him to lose consciousness. (*Id.* at 512). In March 2007, plaintiff went to the emergency room after having two seizures in one day, at least one of which resulted in a loss of consciousness. (*Id.* at 502). Prior to each of these seizures, plaintiff had missed a dose of Dilantin. (*See id.* at 318, 502, 512, 516). Plaintiff also testified that he has liver problems that cause his blood levels to fluctuate and alter the efficacy of his anti-seizure medication. (*Id.* at 25). On November 8, 2006, plaintiff was evaluated by Dr. Anna S. Tseng, a neurologist, who diagnosed him with partial epilepsy, inadequately controlled. (*Id.* at 392-94). Dr. Tseng recommended a series of tests, including an MRI and an EEG, and suggested changing anti-seizure medication. (*Id.* at 394). At the administrative hearing, Dr. Sterling E. Moore, a non-examining medical consultant, testified that plaintiff's impairments included a history of epilepsy that had been accepted by a neurologist. (*Id.* at 36). However, Dr. Moore was unable to give an opinion as to the severity of this impairment because the frequency of plaintiff's seizures had not been established, the results of tests ordered by the neurologist were not available, and the reasons that medication failed to control the seizures had not been addressed. (*See id.* at 35-36).

Viewed as a whole, this evidence at least suggests that plaintiff may meet the requirements of Listing 11.02 -- *grand mal* seizures occurring more than once a month despite at least three months of prescribed treatment, with daytime episodes involving loss of consciousness. *See* 20

C.F.R. Pt. 404, Subpt. P., App. 1, § 11.02. Yet the ALJ wholly failed to consider that Listing in finding that plaintiff was not disabled. *See, e.g. Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir.2007) (ALJ has a duty to analyze plaintiff's impairments under every applicable Listing). Instead, at Step 3 of the sequential evaluation, the judge discussed whether plaintiff's *mental* impairments satisfied the requirements of Listing 12.04 and 12.06. (*See id.* at 14-15). The judge never mentioned Listing 11.02. As a result of this legal error, remand is required. *Bowman v. Astrue*, No. 1-09-CV-137, 2011 WL 744767 at *18 (N.D. W.Va. Jan. 27, 2011), *rec. adopted by*, 2011 WL 736806 (N.D. W.Va. Feb. 23, 2011) (disability determination was not supported by substantial evidence where ALJ failed to compare criteria of Listing 11.02 and 11.03 to evidence of plaintiff's severe seizure impairment); *Miller v. Commissioner of Social Sec.*, 181 F.Supp.2d 816, 820 (S.D. Ohio 2001) (remand required where ALJ found that plaintiff's epilepsy was a severe impairment, but failed to consider Listing 11.03). *See also Lynch v. Astrue*, No. 7-10-CV-0032-BD, 2011 WL 1542056 at *3-4 (N.D. Tex. Apr. 22, 2011) (remand required where ALJ failed to reference potentially applicable Listing and did not discuss all relevant evidence in the context of the Listing).

In response, the Commissioner makes several arguments, none of which are supported by the record. First, the Commissioner contends that "the ALJ fully addressed the medical evidence related to Robertson's seizures and found that he did not satisfy any Listing[.]" (*See* Def. MSJ Br. at 7). However, nowhere in the hearing decision does the ALJ discuss plaintiff's seizures in light of Listing 11.02 or 11.03. Second, the Commissioner accuses plaintiff of relying "on his own uncontroverted testimony and reports to his doctors" that his seizure condition is disabling. (*See id.* at 8). This is also incorrect. In addition to his own testimony, plaintiff cites to ample medical evidence documenting the frequency and severity of his seizures. (*See* Plf. MSJ Br. at 4-5, 13). Third, the Commissioner argues that "the ALJ considered Dr. Moore's expert opinion that the medical evidence

indicated that Robertson's seizures were secondary to non-compliance when he ran out of Dilantin."

(*See* Def. MSJ Br. at 8). This argument mischaracterizes the record. At the administrative hearing, Dr. Moore testified:

> Mr. Robertson has a history of epilepsy and don't have good evaluations in the file, Judge. The neurologist, November 6th of '06, . . . , it, the initial evaluation and ordered a number of studies to be done, and I don't find where these have been done, have I overlooked them? At that examination, the, he felt that there were partial complex as well as grand mal seizures, frequencies difficult to assess at that point. He gave a history of having 10 to 15 episodes a week, where he would have confusion spells, but the frequency from the file, Judge, I cannot tell.
>
> He's had some seizures, seen in the emergency room and at that time he would have Dilantin levels which were sub-therapeutic, they'd by down in the 3 range. I see at least three, well two episodes where they were 3.2 and 3.3, and there's one note where it was noted in the emergency room that he had seizures secondary to non-compliance, not taking the medication. It doesn't explain what, what the problem was, I presume from the testimony it might have been finances, but there's one episode in '07 where he had had a seizure two weeks before when he ran out of Dilantin, so it would appear that the *grand mal* seizures, at least in part, are due to low blood levels for whatever reason. Certainly medications can have some impact on the ability to absorb the Dilantin and for the Dilantin to be effective, but I don't see where these have been addressed.

(Tr. at 35-36). Contrary to the Commissioner's assertion, Dr. Moore *did not* offer an opinion regarding plaintiff's non-compliance with medication therapy. Instead, Dr. Moore stated that the medical evidence did not address why plaintiff's blood levels revealed sub-therapeutic levels of anti-seizure medication. Nor did the ALJ discuss the reasons why plaintiff's blood levels were low or consider the significance of that evidence. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 11.00(A) (where medication therapy appears to be inadequate, ALJ should examine whether the inadequacy is caused by idiosyncrasy in absorption or metabolism of the drug). If anything, Dr. Moore's observations regarding deficiencies in the medical evidence should have caused the ALJ to further

develop the record. *See Cornett v. Astrue*, 261 Fed.Appx. 644, 647, 2008 WL 58822 at *2 (5th Cir. Jan. 3, 2008) (ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits). Dr. Moore specifically noted that the results of tests ordered by the neurologist were missing, and it was difficult to assess the frequency of plaintiff's seizures and the reasons for his low blood levels based on the limited information contained in the file. (*See* Tr. at 35-36). The ALJ's failure to recontact plaintiff's neurologist or request a consultative examination provides an independent basis for remand. *See Lewis v. Astrue*, No. 3-07-CV-1982-BD, 2009 WL 4030781 at *4 (N.D. Tex. Nov. 19, 2009) (medical consensus that plaintiff should be further evaluated to determine the extent of her limitations triggered the ALJ's duty to develop the record by ordering a consultative examination).

## CONCLUSION

The hearing decision is reversed, and this case is remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.[1]

SO ORDERED.

DATED: August 26, 2011.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE

---

[1] By remanding this case for further administrative proceedings, the court does not suggest that plaintiff is or should be found disabled.